IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CHRISTOPHER MAURICE BROOKS,
    Plaintiff,

vs.                                          Case No.: 3:14cv691/MCR/MD

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,
    Defendant.
_____/

**REPORT AND RECOMMENDATION**

        This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D) and 72.3 of this court relating to review of administrative determinations under the Social Security Act ("Act") and related statutes, 42 U.S.C. § 401, *et seq*. It is now before the court pursuant to 42 U.S.C. § 405(g) of the Act for review of a final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff Brooks' application for a period of disability and disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401–34.

        Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

I.       PROCEDURAL HISTORY

        On March 2, 2012, Plaintiff, Christopher Maurice Brooks, filed an application for benefits, claiming an onset of disability as of March 2, 2012 (Tr. 23).[1] His application was denied initially and on reconsideration, and thereafter Mr. Brooks requested a hearing before an administrative law judge ("ALJ"). A hearing was held on November 7, 2013, and on April 11, 2014, the ALJ issued a decision in which he found Mr. Brooks "not disabled," as defined under the Act, at any time

---

      [1] All references to "Tr." refer to the transcript of Social Security Administration record filed on March 10, 2015 (doc. 5). Moreover, the page numbers refer to those found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the court's electronic docketing system.

through the date of his decision (Tr. 23–35). On June 13, 1012, the Appeals Council denied Mr. Brooks' request for review (Tr. 1-6). Thus, the decision of the ALJ stands as the final decision of the Commissioner, subject to review in this court. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007). This appeal followed.

II.     FINDINGS OF THE ALJ

On April 11, 2014, (date of ALJ decision), the ALJ made several findings relative to the issues raised in this appeal (Tr. 23-35):

1)  Plaintiff meets the insured status requirements of the Act through December 31, 2016;[2]

2)  Plaintiff has not engaged in substantial gainful activity since March 2, 2012, the alleged onset date;

3)  Plaintiff has the following severe impairments: multiple sclerosis, asthma, and sleep apnea;

4)  Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1;

5)  After careful consideration of the entire record, the ALJ finds that Plaintiff has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except he is precluded from climbing ladders, ropes, or scaffolds. He can only occasionally climb stairs. He is limited to the simple routine tasks of unskilled work involving no more than simple, short instructions and simple work-related decisions with few workplace changes. He is to avoid concentrated exposure to dust, fumes, and gases;

6)  Plaintiff is unable to perform any past relevant work;

7)  Plaintiff was born on February 26, 1972 and was 40 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date;

8)  Plaintiff has at least a high school education and is able to communicate in English;

---

[2]Thus, the time frame relevant to this appeal is March 2, 2012 (alleged onset) to April 11, 2014 date of ALJ decision (date last insured).

9) Transferability of jobs kills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled," whether or not the Plaintiff as transferable job skills;

10) Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform; and

11) Plaintiff has not been under a disability, as defined in the Act, from March 2, 2012, through the date of this decision.

III.   STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1214 (11th Cir. 1991). As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998); *Lewis*, 125 F.3d at 1439; *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). Substantial evidence is more than a scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); *Lewis*, 125 F.3d at 1439. The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). Even if the evidence

preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. *Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do her/his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)–(g), the Commissioner analyzes a disability claim in five steps:

1. If the claimant is performing substantial gainful activity, he is not disabled.

2. If the claimant is not performing substantial gainful activity, his impairments must be severe before he can be found disabled.

3. If the claimant is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if his impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4. If the claimant's impairments do not prevent him from doing his past relevant work, he is not disabled.

5. Even if the claimant's impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps him from performing his past work. 20 C.F.R. § 404.1512. If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. *MacGregor v. Bowen*, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must

then prove he cannot perform the work suggested by the Commissioner. *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.    PLAINTIFF'S MEDICAL HISTORY

Dr. Jeffery English, a neurologist with the MS Center of Atlanta (Tr. 275), has treated Mr. Brooks for Multiple Sclerosis ("MS") since the early 2000's. (Tr . 320). Over the course of this extensive treating relationship, Dr. English has made voluminous notes regarding the cognitive decline he has observed in his patient. A December 10, 2004 MRI report showed "Abnormal Brain MRI study showing moderate lesion load demyelinating disease without active enchancement." (Tr. 319.) Mr. Brooks reported cognitive decline in April of 2005, stating that he was experiencing short term memory problems that had caused him to struggle in his classes. At that point, his wife had already taken over all the important household duties and he needed help at work. Dr. English noted "Memory is the biggest disabling factor." (Tr. 308).

Over the ensuing years Dr. English repeatedly noted cognitive decline, inadvisability to drive and subtle evidence of progression. His wife reported some increase in agitation and some decrease in memory." (Tr. 306.)

Dr. English felt that Mr. Brooks suffered from advancing cognitive decline: "He has been clinically and radiographically stable over the last year. He has some subtle changes which are progressing with his memory." (Tr. 291). Mr. Brooks' struggled with the symptoms of MS. He was repeating conversations, merging conversation, and having trouble multitasking. Later in 2007, Dr. English continued to note that "Mr. Brooks appears stable with the exception of noted memory decline by his family. He is repeating himself more." (Tr. 289-290).

On February 13, 2009, Dr. English noted that "Mr. Brooks actually looked better than I've seen him in quite some time." (Tr. 285). However, the treatment records for Mr. Brooks continue to relate the progressive decline of Mr. Brooks due to his MS: "Overall, he appears to be doing about the same. Besides the fatigue, his cognitive dysfunction is the biggest problem." (Tr. 283). Dr. English noted again 2010 that Mr. Brooks "continues to have memory decline according to his wife. Otherwise stable think he has been doing very well." (Tr. 280).

On April 12, 2012, Dr. English opined that Mr. Brooks suffered from MS and exhibited severe fatigue as a result of the illness. He also found that Mr. Brooks was capable of 5/5 grip strength and had 5/5 strength in his lower extremity. (Tr. 501).

On August 15, 2013, Dr. English filled out a questionnaire in which he opined that Mr. Brooks suffered from MS, which caused, "persistent disorganization of motor function in two extremities." (Tr. 575). He further felt Mr. Brooks suffered from a loss of cognitive abilities or affective changes that included short or long-term memory impairment, perceptual or thinking disturbances, and personality changes, and that those symptoms were accompanied by marked restriction of activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, or pace, and repeated episodes of decompensation, each of extended duration. (Tr. 576). He indicated that Mr Brooks suffered from a medically documented history of an ongoing organic mental disorder that had lasted at least two years and had caused more than minimal limitation on Mr. Brooks' ability to do basic work activities, along with a current history of one or more years of being unable to function outside a highly supportive living arrangement, with an indication that Mr. Brooks was in continued need of the living arrangement. Mr. Brooks also suffered from significant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, shown on physical examination, that resulted from neurological dysfunction in areas of the central nervous system known to be pathologically involved by the MS process. (Tr. 577).

The Department of Veterans Affairs ("VA") reviewed Mr. Brooks' medical issues and assigned a permanent 100% disability evaluation for [his] service connected disability. (Tr. 610).

Mr. Brooks was also examined by Michael Kasabian, D.O., at the request of the Commissioner, on May 3, 2012. Mr. Brooks reported that his speech was sometimes bad, his balance was off and his memory was poor, he had a history of asthma and sleep apnea, and that when he stood for more than five minutes his ankles started to hurt. On examination his speech and hearing were normal, there was no edema in his extremities and peripheral pulses were intact and equal x 4, deep tendon reflexes were 2/4 and muscle strength was 5/5 in all four extremities. He could stand on his heels and toes, grip strength was 5/5 bilaterally, he could handle fine objects without difficulty and could tie his shoes without assistance. He did not need a cane or other

assistive device, and he had no limp. Dr. Kasabian's impression was history of MS, history of ankle pain, asthma, and sleep apnea. (Tr. 503-507).

Dr. Kasabian examined Mr. Brooks again on September 25, 2012. Mr. Brooks reported that his only MS symptom was left knee pain. His examination was again completely normal as to strength, gait, speech, dexterity and hearing, although the left knee was a little tender with range of motion testing. (Tr. 541-42).

Mr. Brooks was referred to Richard Doll, Ph.D., for a psychological evaluation on May 12, 2012. Dr. Doll indicated that Mr. Brooks' ability to do work related activities was guarded, but sustained concentration was fair; it was unclear whether he could handle stress in the work environment; and his social interaction was good. (Tr. 509-12).

On July 3, 2013, Mr. Brooks began treatment with Steve Hirshorn, Ph.D. for depression. His primary complaint was marital problems, and Dr. Hirshorn counseled him in that regard on four occasions through August 20, 2013 (Tr. 552-555)

V.   DISCUSSION

Mr. Brooks presents five issues for the court's consideration, but the real issues in this case are (1) the ALJ's treatment of findings by the VA, and (2) whether the ALJ properly applied the law to the evidence. The issues will be discussed in that order.

1.   <u>Whether the ALJ erred in his consideration of a 100% impairment rating by the VA.</u>

Mr. Brooks is a veteran, and as such is entitled to medical care by the VA. Based on his physical condition and inability to work, the VA rated him 100% disabled as of March 24, 2012 (Tr. 610). The bases of his disability included weakness in all four extremities associated with MS, with sleep apnea and asthma. (*Id*.).

It is clear in the Eleventh Circuit that a disability rating by the Department of Veterans Affairs or Florida's Division of Workers Compensation is not binding on the Commissioner, but is entitled to great weight, and that it is error for the Commissioner to ignore it. *Falcon v. Heckler*, 732 F.2d 827 (11th Cir. 1984) (holding that because Florida workers compensation disability law and Social Security disability law operate similarly, the ALJ must give great weight to a workers compensation decision); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1241 (11th Cir. 1983) (holding that "findings of disability by another agency, although not binding on the [Commissioner], are entitled

to great weight."); *Rodriguez v. Schweiker*, 640 F.2d 682, 686 (5th Cir. Unit A, March 25, 1981)[3] (holding that "a V[eterans] A[dministration] rating is certainly not binding on the [Commissioner], but it is evidence that should be considered and is entitled to great weight . . . and [in this case] should have been more closely scrutinized."); *DePaepe v. Richardson*, 464 F.2d 92 (5th Cir. 1972); *Hogard v. Sullivan*, 733 F.Supp. 1465 (M.D. Fla. 1990).

The ALJ is not required, however, to examine each part of a veteran's disability documentation exhaustively, nor state that he gives the rating "great weight." *Adams v. Comm'r of Soc. Sec.,* 542. The VA's rating is considered along with all relevant evidence, *Kemp v. Astrue*, 308 F. App'x 854, 857 (11th Cir. 2009).

Here, the ALJ gave careful consideration to the VA's rating, but found it insufficient to force a finding of disabled based on the overall weight of the entire evidence. He also noted that the VA's definition of unemployability is different from the Commissioner's, and that the VA has a more deferential burden of persuasion than the Commissioner, meaning that a veteran is given the benefit of the doubt,[4] while a Social Security claimant bears the burden of establishing a severe impairment. 20 C.F.R. § 404.1512.

The ALJ did not err in not agreeing with the VA's disability rating, and Mr. Brooks is not entitled to reversal on this issue.

    2.    <u>Whether the ALJ properly applied the law to the evidence.</u>

As noted above, this issue is the court's distillation of four separate but closely related claims that (a) the ALJ mischaracterized "progression" of Mr. Brooks' disease as "progress" in regaining his health, (b) the ALJ acted as his own expert, (c) the ALJ was guilty of picking and choosing

---

    [3] Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

    [4] 38 C.F.R.§ 3.102–Reasonable doubt.

    It is the defined and consistently applied policy of the Department of Veterans Affairs to administer the law under a broad interpretation, consistent, however, with the facts shown in every case. When, after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding service origin, the degree of disability, or any other point, such doubt will be resolved in favor of the claimant.

among the medical evidence, and (d) the ALJ's rejection of the treating physician's opinion was error.

As to the alleged "mischaracterization," the ALJ stated: "Treatment notes from February of 2009 reflect that the claimant was having a steady progression with his memory and he was looking very good." (Tr. 29). This sentence appeared in a lengthy, comprehensive and accurate recitation of Mr. Brooks' MS history and condition. While the sentence, out of context, can be read as finding that Mr. Brooks' condition was improving (steady progression with his memory), it can likewise be read as stating exactly what Dr. English said. The progression with memory was progressing downward. The ALJ will not be reversed on such an ambiguity.

The ALJ did not act as his own expert and he was not guilty of picking and choosing among the medical evidence. Mr. Brooks contends that the ALJ rejected Dr. English's opinion without the input of any other expert, but this is not true. The examinations by Dr. Kasabian showed good strength and nothing more than mild tenderness on one knee. Dr. Doll was not entirely positive in his outlook, but did not rule out work.

Finally, Mr. Brooks contends that the ALJ erred in rejecting Dr. English's opinion. Absent good cause, the opinion of a claimant's treating physician must be accorded considerable or substantial weight by the Commissioner. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-1241 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Broughton v. Heckler*, 776 F.2d 960, 960-961 (11th Cir. 1985); *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986). "Good cause" for discounting the opinion of a treating physician exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Phillips,* 357 F.3d at 1241; *see also Lewis*, 125 F.3d at 1440 (citing cases).

If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th

Cir. 1986); *see also Schnor v. Bowen,* 816 F.2d 578, 582 (11th Cir. 1987).  When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical impairments at issue; and (6) other factors which tend to support or contradict the opinion.  20 C.F.R. 404.1527(d).

The opinion of a non-examining physician is entitled to little weight, and, if contrary to the opinion of a treating physician, is not good cause for disregarding the opinion of the treating physician, whose opinion generally carries greater weight.  *See* 20 CFR § 404.1527(d)(1); *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985); *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *Hurley v. Barnhart*, 385 F.Supp.2d 1245, 1255 (M.D.Fla. 2005).  However, a brief and conclusory statement that is not supported by medical findings, even if made by a treating physician, is not persuasive evidence of disability.  *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987); *Warncke v. Harris*, 619 F.2d 412, 417 (5th Cir. 1980).

"When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Phillips*, 352 F.3d at 1241.  Failure to do so is reversible error.  *Lewis*, 125 F.3d at 1440 (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986));[5] *see also Nyberg v. Comm'r of Soc. Sec.*, 179 Fed.Appx. 589, 591 (11th Cir. 2006) (Table, text in WESTLAW)(also citing *MacGregor*).

The ALJ examined and considered the entire medical evidence.  His comment on "progression" was ambiguous at worst, and was only the smallest part of his overall discussion of Mr. Brooks' condition.  He specifically relied on the reports of Dr. Kasabian and Dr. Dol.  He gave supported reasons for rejecting Dr. English's opinion.  He noted Dr. Kasabian's finding that Mr. Brooks had full range of motion and normal muscle strength in his arms and legs, and complained only of left knee pain.  He also noted Dr. Doll's findings of good recent and remote memory, providing a good personal history, good and coherent language and the ability to perform two-step

---

[5]*MacGregor* further held that "Where the [Commissioner] has ignored or failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true."  786 F.2d at 1053.

commands (Tr. 31, 510-11). He further noted that in March 2012, Dr. English filled out a form that identified severe fatigue (but not sensory loss or motor loss) as Mr. Brooks' only symptom while finding full grip and leg strength (Tr. 30, 501).

"In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings." *Hunter v. Social Security Administration, Commissioner.,* 808 F.3d 818, 822 (11th Cir. 2015) citing *Black Diamond Coal Min. Co.*, 95 F.3d 1079, 1082 (11th Cir. 1996). The ALJ found that Mr. Brooks was able to perform sedentary work, and his finding was supported by substantial record evidence. Mr. Brooks has failed to show that the ALJ applied improper legal standards, erred in making his findings, or that any other ground for reversal exists. For the foregoing reasons, the Commissioner's decision should not be disturbed. 42 U.S.C. § 405(g); Lewis, 125 F. 3d at 1439; Foote, 67 F.3d at 1560.

It is therefore respectfully **RECOMMENDED**:

That the decision of the Commissioner be **AFFIRMED**, that this action be **DISMISSED,** and that the clerk be directed to close the file.

At Pensacola, Florida this 18th day of February 2016.

/s/ *Miles Davis*
**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636**.